## Case No. 13,731.

### TALBOT et al. v. WAKEMAN et al.

[25 Betts, D. C. MS. 152; 19 How. Prac. 36.] [1]

District Court, S. D. New York.   Feb. 14, 1860.

PLEADING IN ADMIRALTY — PROOFS — VARIANCE —
CHARTER PARTY—STORAGE.

[1. The charter party, under seal, upon which the suit was founded, was between the master of the vessel of the first part, and T. & Co. and L. & Co. of the second part. In a suit against the owners of the vessel for nonperformance of the contract the libel and proofs showed the cause of action in T. & Co. and the P. Co., and showed that L. & Co. acted merely as the agents of the P. Co. *Held* that, although this was a variance which would be fatal in an action at law, yet that in admiralty it could not avail to defeat libelant's cause of action.]

[2. Where the charter party provided for the freighting of a cargo which from its very nature must have been contemplated should be stored on deck, the vessel is not liable for any loss or damage arising on account of such deck storage.]

[3. Where a cargo of spars is stored on deck under the direction and superintendence of the master, but is stored in so faulty and negligent a manner that loss arises, not on account of the position where stored, but on account of the improper manner of storing, the vessel is liable.]

[This was an action on a charter-party by William C. Talbot and others against William W. Wakeman and others.]

BETTS, District Judge. This action is founded upon a charter party executed January 24, 1855, at San Francisco, between John Briard, master of the brig Eolian, of the first part, and William C. Talbot & Co. and Lubeck & Co. of the second part, for a freighting voyage of the brig from San Francisco to Puget Sound with a cargo of planks, square timber, and spars, thence, to China, and of merchandise and passengers from China back to San Francisco. It is prosecuted in the names of William C. Talbot & Co. and the Puget Mill Company of Puget Sound against William Wakeman, Captain Briard, and eight other persons as owners of

---

[1] [19 How. Prac. 36, contains only a partial report.]

the brig, and large damages are demanded because of the nonfulfillment of the charterparty and loss of cargo caused thereby. The case is presented by the pleadings on both sides in a very obscure and indefinite shape, but was brought to hearing upon proofs without any exception by either party to defects or insufficiency in the pleadings. The libel sets out the gravamen of the action in four general allegations and various special paragraphs, but wholly omits stating the name or interest of one of the parties to the charter party (Lubeck & Co.), and makes the Puget Mill Company a party libellant when such company is not named in the charter party. And the answer denies generally all the particular allegations and paragraphs, and puts forth as the facts in the case in avoidance and defense the averment that the master of the brig of "the one part and Lubeck & Co. of the other made a charter party for the affreighting of said vessel, and that she was at all times in proper and seaworthy condition, but to perform the portion of said contract stipulated, but in consequence of the perils of the sea and stress of weather a portion of said cargo was thrown over and another part sold from necessity to make repairs and enable the performance of said contract; and that on the arrival of the vessel at China, the parties acting as agent for the charterers not being able to perform their contract in this: that they would not receive the cargo and could not and would not load the vessel, or furnish her cargo, or in any way carry out said charter, the said vessel and the owners thereof were largely damaged, and to an amount far exceeding the alleged claim of the said libellant." This answer, instead of upholding and adhering to the sweeping and explicit denial of all the charges of the libel, impliedly admits the essential one, and places the defence upon excusatory obligations on the part of the libellants arising subsequent to the execution of the charter, and in the effort of the brig to perform the stipulations of the charter on her part.

On the hearing of the cause, the 15th of December last, various depositions were read in support of the case on the part of the libellants, and the depositions of Capt. Briard and John Watson for the defence. After the hearing in court was terminated by a brief oral argument of counsel for the respective parties, the papers were retained by them under a permission to furnish the court a more full argument on paper with their several points and authorities.

The counsel for the defendants represent that they have since accidentally misplaced or lost the proofs offered in court for the defence. The evidence was wholly on depositions, and accordingly the court has not in possession any of the defendants' testimony in extenso, and no written record or minute of it, nor such recollection of its import retained from hearing it read hastily in the current of public business as to justify relying on such

impressions to sanction admitting or rejecting facts claimed to be covered by those proofs. After the decision of the cause has been deferred through the terms of December and January to this period in February term (the 14th) to enable the defendants to supply their lost proofs, the court, on the demand and importunity of the libellants' counsel, feels compelled to render its decision in the cause upon the papers as they stand before it.

The defendants raise some points against the adequacy of the libellants' action in law to enable them to demand a decree upon it. It is insisted there is a fatal variance between the case made upon the libel and the proofs offered to support it, inasmuch as the action is founded upon a charter party given to Watson & Co. and Lubeck & Co. by the owners of the brig on the 24th of January, 1855, under seal, whilst the libel sets forth the Puget Mill Co. as parties under the contract, and avers that Lubeck & Co. are not parties, but only agents and commission merchants for the libellants, and that the libellants have the entire interest in the contract, and full authority to enforce the same for their use and benefit in their own name. This variance between the sealed contract and the cause and right of action stated in the libel would undoubtedly be vital at law, and no averments or proofs could be admitted in contravention of the written contract under seal. There is a wider latitude allowed in admiralty practice. In proceedings before those tribunals no technical rules of variance or departure in pleading are observed. Dupont v. Vance, 19 How. [60 U. S.] 162. Particularly commercial contracts, charter parties, &c., are interpreted and enforced with a broad liberality, with a view to enforce the fair understanding and purpose of parties to instruments not contemplated to be artificial and technical. Raymond v. Tyson, 17 How. [58 U. S.] 53; Barreda v. Silsbee, 21 How. [62 U. S.] 147. The witness to the charter contract proved that Lubeck & Co. had no personal interest in it, and the insertion of the Puget Mill Co. may be disregarded and treated as surplusage, no attempt being made to prove any interest or prejudice to them in the transaction.

Again, it is alleged in defence that the libellants cannot claim damages because of lading the spars upon the deck of the brig, as the nature of the articles to be transported necessarily imported that mode of carriage; and it is argued that the libellants are chargeable at law with the responsibility of that mode of conveyance according to the express ruling of the supreme court. Lawrence v. Minturn, 17 How. [58 U. S.] 100. In that case there was evidence that the shipper knew the manner the cargo was stowed and acquiesced in the safety and propriety of its stowage on deck. Here the allegation and proof is that the stowage was faulty and unsafe, and no evidence is offered that the libellants assented to this mode of stowage, or were made acquainted with it. On the contrary, there is direct proof that it was made exclusively under the authority and direction of the master of the vessel, and although from the character of the articles engaged by the charter party and on the bill of lading to be transported on deck, the ship is not chargeable for loss or damage caused to that portion of the cargo from its place of carriage, yet is, if the loss was occasioned by its faulty stowage. Such cause of loss is both averred in the libel and proved on the hearing. In this case there is no evidence furnished excusing the alleged jettison of cargo or disposal of portions of it for the necessities of the vessel, and as the case stands upon the proofs the libellants are no way barred by obligations of law from recovering for the value of the cargo shipped at Puget Sound and not delivered in China, and also for the failure to perform the whole contract embodied in the charter party, both in relation to the outward and home voyage. A decree will be entered accordingly for the libellants with an order of reference to a commissioner to estimate and report those damages to the court.

[NOTE. Subsequently the lost proofs were found, and the court granted a rehearing, at which the decision rendered above was confirmed. Case No. 13,731a.]